445 F.2d 726
 144 U.S.App.D.C. 250
 A. G. SCHOONMAKER CO., Inc., et al.
v.
Stanley R. RESOR, Secretary of the Army, et al., Appellants.
A. G. SCHOONMAKER CO., Inc., Bogue Electric Manufacturing
Co., Appellant,
v.
Stanley R. RESOR, Secretary of the Army, et al.
 Nos. 24706, 24708.
 United States Court of Appeals, District of Columbia Circuit.
 Argued Dec. 15, 1970.
Decided June 23, 1971.
 
 1
 Mr. Walter H. Fleischer, Atty., Department of Justice, with whom Messrs. Thomas A. Flannery, U.S. Atty., and Alan S. Rosenthal, Atty., Department of Justice, were on the brief, for appellants in No. 24,706 and government appellees in No. 24,708. Mr. John A. Terry, Miss Mary E. Folliard, Asst. U.S. Attys., and Mr. Morton Hollander, Atty., Department of Justice, also entered appearances for appellants in No. 24,706.
 
 
 2
 Mr. Edward A. Groobert, Washington, D.C., with whom Mr. Bennett Boskey, Washington, D.C., was on the brief, for appellant in No. 24,708 and appellee Bogue Electric Co. in No. 24,706.
 
 
 3
 Mr. Alan Y. Cole, Washington, D.C., with whom Mr. Stephen L. Moss, Washington, D.C., was on the brief, for appellee A. G. Schoonmaker Co., Inc.
 
 
 4
 Before BAZELON, Chief Judge, TAMM, Circuit Judge, and SMITH,* Chief Judge, U.S. District Court for the District of Montana.
 
 
 5
 PER CURIAM: On consideration of appellee's petition for rehearing, it is hereby ordered that the court's opinion of March 5, 1971, is vacated, and the opinion issued today is substituted therefor. The petition for rehearing is otherwise denied.
 
 SMITH, District Judge:
 
 6
 The Department of Defense sought to procure Generator Sets for the armed services. The responsibility for the procurement of the 15 KW and 30 KW Sets was assigned to the Army and for the 100 KW and 200 KW Sets to the Air Force. Technical proposals were solicited and received, following which invitations to bid were issued to three qualified firms, A. G. Schoonmaker Co., Inc. (hereafter Schoonmaker), Bogue Electric Mfg. Co., (hereafter Bogue) and Libby Welding Company, Inc. (hereafter Libby). Bids were received from all three and when the bids were opened Schoonmaker was the apparent low responsible bidder. Bogue promptly protested to the Comptroller General on the ground that the Schoonmaker bid was not responsive, and the Comptroller ordered that all bids be rejected and new bids solicited from the three qualified bidders.[1] Schoonmaker, claiming that it was entitled to a contract award, sought declaratory and injunctive relief in the United States District Court against the Secretary of the Army, the Secretary of Defense and the Comptroller General. Bogue, claiming that it was entitled to a contract award, intervened, seeking declaratory and injunctive relief against the same parties. The District Court made findings and conclusions, and on the baisis of them entered a judgment which, in effect, required that Schoonmaker be awarded the contract, 319 F.Supp. 933. These appeals followed. Now the Government Departments claim that the decision of the Comptroller rejecting all bids was correct. Schoonmaker contends that it should be awarded the contract and Bogue contends that it should be awarded the contract.
 
 
 7
 The invitation for bids called for the production of six units each of four different preproduction models of generator sets to be delivered over a period of 300 to 420 days, and the production of specified quantities of production models to be delivered over a period of 712 to 1192 days. The Schoonmaker bid priced the preproduction models at a price greater than the production models, but the total bid for all models was lower than the Bogue bid for all models. The Bogue bid priced the preproduction and production models at the same figure. The manner in which the preproduction and production models are priced is of appreciable importance to the bidder, since if nonrecurring development costs are recovered from the preproduction models in a period of 420 days the over-all financing costs are less than if these costs are spread over 1192 days, the life of the contract. Bogue's protest was based upon its position that the invitation to bid required identical pricing of production and preproduction models, and Schoonmaker's position was the opposite.
 
 
 8
 The Comptroller found that the invitation to bid was ambiguous and stated: 'An award cannot be made to either bidder since the invitation failed to provide clear and objective instructions whereunder all bidders were apprised, in advance of the bid opening, of the manner in which prices were to be computed in order to be responsive and eligible for award. Otherwise the bidders could not compete on an equal basis as required by law.'The District Court examined the general equities of the case and concluded that Schoonmaker was a responsible low bidder, that his bid was responsive, and that the rejection of it was arbitrary. The District Court, however, did not examine the Comptroller's findings for the purpose of determining whether there was any basis for the conclusion that the contract was in fact ambiguous and that the public interest required that all bids be rejected. The invitation to bid did not expressly state whether the production and preproduction models should be priced the same, and the fact is that the bids were not made on the same basis. The Army and the Air Force (with respect to its invitation to bid) thought that the invitations should require identical pricing of all items. Bogue similarly interpreted the invitation, made a specific request for a waiver of this requirement and was advised by the Army that there could be no waiver. Other bidders were not advised of these communications between the Army and Bogue. Schoonmaker interpreted the invitation differently. All parties were advised that the Air Force was requiring identical pricing under its invitation on the ground that armed forces procurement regulations so provided.
 
 
 9
 The Comptroller, after carefully analyzing the entire contract, decided that the invitation did not require identical pricing but was ambiguous.
 
 
 10
 Regardless of the manner in which we would interpret the invitation, we cannot find that different people might not read it differently or that the Comptroller was either arbitrary or capricious in deciding that it was ambiguous and did not provide clear and objective instructions to the bidders. Certainly what happened following the invitation to bid tended to obfuscate rather than clarify the situation. If this conclusion is supportable as we think it is, then the Comptroller, who was mindful of the policy[2] that when bids are opened the integrity of the bidding system may be impaired unless contracts are awarded, did no more than to conclude it to be in the public interest to follow the dictates of 10 U.S.C. 2305(b) which requires that the bidding instructions be such as to insure free and fair competition. We cannot say that this conclusion was either arbitrary or capricious.
 
 
 11
 We recognize that in this case the Comptroller's opinion differed from that initially taken by the Army. Whether the Army was convinced by the Comptroller's reasoning or acceded to it to avoid a conflict, the Army's final action should not be set aside. If the Army did finally adopt the Comptroller's opinion as its own then its action is not arbitrary or capricious unless the opinion upon which it was based was arbitrary or capricious. If on the other hand the Army simply acceded to the opinion of the Comptroller to avoid a conflict, still its act is not arbitrary or capricious. An accession by a contracting officer to the General Accounting Office, at least where the opinion as to which the accession is made is itself reasonable, may be in the public interest if for no other reason than that it eliminates the insufferable uncertainties faced by all parties where there is conflict between the General Accounting Officer and a procuring Agency.[3]
 
 
 12
 The cases are remanded with directions to enter judgments for the defendant Resor in both cases on appeal.
 
 
 13
 So ordered.
 
 TAMM, Circuit Judge (dissenting):
 
 14
 I believe that the District Court properly found that Schoonmaker should be awarded this contract. The findings of fact and conclusions of law of the District Court are substantial and accurate. I would affirm the District Court.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. 292(c) (1964)
 
 
 [1]
 The Army complied
 
 
 [2]
 See 10 U.S.C. 2305(a), ASPR 2-401.1(a), Superior Oil Co. v. Udall, 133 U.S.App.D.C. 198, 409 F.2d 1115 (1969)
 
 
 [3]
 In John Reiner & Company v. United States, 325 F.2d 438, 163 Ct.Cl. 381 (1963), the Court of Claims said: 'It cannot be contrary to 'the best interests of the Government'-- the controlling standard of the termination clause-- to end a contract which the Comptroller General has branded as incorrectly advertised.' We think the quoted language is appropriate here in the application of the words 'public interest' appearing in 10 U.S.C. 2305(c), but we do not touch upon the problem which would be presented if the conflict were occasioned by some unreasonable position taken by the Comptroller. Likewise we do not reach the problem of the authority of the Comptroller to issue decisions in bid protests